**R. J. MARZELLA & ASSOCIATES, P.C.**
BY: Robin J. Marzella, Esquire
Pennsylvania Supreme Court I.D. No. 66856          **Attorneys for Plaintiffs,**
3513 North Front Street
Harrisburg, PA 17110
Telephone: (717) 234-7828
FACSIMILE: (717) 234-6883

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
CIVIL ACTION - LAW

| | | |
|---|---|---|
| CRYSTAL FRY and ANDREW FRY, Individually and as the Administrators of the Estate of JADE ELIZABETH FRY | : | DOCKET NUMBER: |
| PLAINTIFFS | : | |
| vs. | : | |
| THE UNITED STATES OF AMERICA, | : | PROFESSIONAL MEDICAL NEGLIGENCE |
| DEFENDANT | : | JURY TRIAL DEMANDED |

## COMPLAINT

### JURISDICTION

1. This action arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. §§ 2671 et seq. This court is vested with jurisdiction pursuant to 28 U.S.C.A. § 1346(b).

2. Plaintiffs reside in the above-entitled judicial district. The acts and omissions complained of in this complaint occurred within the Middle District of Pennsylvania.

### THE PARTIES

3. Jade Elizabeth Fry, a minor, was born on August 31, 2014, at 3:25am in the Chambersburg Hospital, Chambersburg, Franklin County, Pennsylvania.

4. Jade survived approximately seven (7) hours and died at 10:42am on August 31, 2014.

5. Crystal and Andrew Fry are competent adult individuals residing in Shippensburg, Franklin County, Pennsylvania.

6. As Jade Elizabeth Fry's biological parents and the Administrators of Jade's Estate, Crystal and Andrew Fry are qualified to bring the claims set forth below.

7. Defendant, United States of America, is the duly constituted and sovereign government of the United States of America.

8. At all relevant times herein, Keystone Women's Care (hereinafter "KWC") was a corporate medical facility with offices and facilities in Chambersburg, Franklin County, Pennsylvania, and was part of the Keystone Rural Health Centers network.

9. At all relevant times herein, KWC is the facility where Crystal Fry had her prenatal checkups with Thomas P. Orndorf, M.D., Yvette Brown, M.D., Ashley K. Lawson, C.N.M., Darlanna Besecker, C.N.M. and other staff, all of whom were the agents, apparent agents, servants and/or employees of KWC and were acting within the course and scope of their employment when providing medical services to Crystal Fry and her child, Jade Elizabeth Fry.

10. At all relevant times herein, Dr. Orndorf, the delivery doctor, and the other medical support staff who cared for or treated Mrs. Fry and her child, Jade, during her delivery were the agents, apparent agents, servants and/or employees of KWC and were acting within the course and scope of their employment when providing medical services.

11. At all times mentioned in this complaint, KWC was, and now is, deemed an eligible health center under the FTCA, and the employees and agents of KWC, including Dr.

Orndorf, were acting within the scope of their employment and with the permission and consent of KWC.

12. On January 5, 2015, Plaintiffs submitted a claim with the Department of Health & Human Services based on the allegations contained within this complaint seeking $1,500,000.00 in damages. Plaintiffs' claim was denied on December 10, 2015. Plaintiffs now timely file this complaint pursuant to 28 U.S.C. § 2401(b).

## FACTS

13. In 2014, Crystal Fry was a twenty-four (24) year old female, whose previous pregnancy history included two uneventful live births in November of 2008 and July of 2011 respectively. The first birth was to a male weighing six pounds and ten ounces (6lb, 10oz). The second birth was to a male weighing seven pounds (7lb).

14. With the pregnancy, which is the subject matter of this Complaint, Crystal Fry's last regular menstrual period was during December, 2013, and her due date was marked as September 17, 2014.

15. Thereafter, Crystal Fry sought obstetrical care at KWC, with her first prenatal visit occurring on or about February 7, 2014.

16. At this time, Crystal Fry's weight was recorded at two hundred and two (202) pounds with a blood pressure of 116/76.

17. Crystal Fry's weight and blood pressure were identical at her last prenatal visit on August 27, 2014, two hundred and two (202) pounds with a blood pressure of 116/76.

18. Fetal ultrasounds were performed on April 28, 2014, May 9, 2014, May 23, 2014, August 12, 2014, and August 19, 2014.

19. Crystal Fry made approximately eighteen (18) visits to KWC between February of 2014 and August of 2014.

20. The first two trimesters of Crystal Fry's pregnancy were relatively uneventful; however, complications began to appear during her third trimester.

21. On Mrs. Fry's May 21, 2014, visit, increased anxiety and panic attacks were noted.

22. On Mrs. Fry's June 20, 2014, visit, she had complaints of cramping and yellowish vaginal discharge.

23. On Mrs. Fry's July 8, 2014, visit, she had complaints of abdominal tightening, believed she was having contractions, and reported losing her mucus plug.

24. On Mrs. Fry's July 23, 2014, visit, irregular contractions were noted.

25. Again, On Mrs. Fry's August 5, 2014, visit, a tightening sensation was reported.

26. On Mrs. Fry's August 11, 2014, visit, she reported having two contractions that day.

27. Finally, on Mrs. Fry's August 12, 2014, visit, she was diagnosed with polyhydramnios.

28. Additionally, Mrs. Fry's August 12, 2014 ultrasound revealed that the umbilical cord was wrapped around the baby's neck.

29. On Mrs. Fry's August 19, 2014, visit, her amniotic fluid index ("AFI") was 31.5cm; significantly higher than a normal AFI of 15 to 20cm.

30. On August 26, 2014, Mrs. Fry called KWC and reported leaking a watery discharge.

31. Despite all of these warning signs, no efforts were made to reduce the amount of amniotic fluid prior to labor or to control and slow the release of amniotic fluid at the onset of labor to prevent the risk of placental abruption.

32. Further, no recommendations were made for a possible cesarean delivery or induction of labor.

33. Mrs. Fry awoke to her water breaking at approximately 1:30am on August 31, 2014.

34. When Mrs. Fry's water broke her increased amniotic fluid volume caused a placental abruption which deprived the baby of oxygen and nutrients.

35. Mrs. Fry rushed to the Chambersburg hospital, arriving at or around 2:45am, and her admission diagnosis included rupture of membranes and vaginal bleeding.

36. A bed side ultrasound revealed fetal heart tones in the 50s – much too low – and an emergency caesarean section was performed by Dr. Orndorf.

37. Jade Elizabeth Fry was born without a pulse at 3:25am on August 31, 2014.

38. Jade Elizabeth Fry's birth weight was five pounds and five ounces (5lbs & 5oz), and her length was nineteen (19) inches.

39. The baby's Apgars were 0, 0, and 0 at 1, 5, and 10 minutes, but the medical staff subsequently found her heartbeat after administering several doses of epinephrine.

40. Unfortunately, the baby had suffered too much trauma and died several hours later, at 10:42am.

## COUNT I – NEGLIGENCE AND MEDICAL MALPRACTICE

41. All prior paragraphs are incorporated herein as if set forth at length.

42. While Crystal Fry was in KWC's prenatal care, KWC and its medical staff were fully aware that Crystal Fry was suffering from severe polyhydramnios, which is likely to cause placental abruption.

43. Yet, KWC and its medical staff negligently deviated from the standard of care by failing to reduce Mrs. Fry's AFI pre-labor via amnioreduction or by any other method or induce labor in a controlled setting to lower the risk of placental abruption.

44. KWC and its medical staff also negligently deviated from the standard of care by failing to give Crystal Fry medication to reduce her levels of amniotic fluid.

45. Instead, through its inaction, KWC and its medical staff negligently allowed Crystal Fry to go into unsupervised labor while suffering from a known dangerous condition.

46. At no time prior to the delivery of Jade Elizabeth Fry did Dr. Orndorf or any other medical staff member at KWC adequately plan for, consider, discuss or otherwise properly evaluate the possibility of placental abruption caused by severe polyhydramnios during labor even though it was a clear and distinct possibility.

47. At no time prior to the delivery of Jade Elizabeth Fry did Dr. Orndorf or any other medical staff member at KWC adequately plan for, consider, or discuss the need for amnioreduction, amniotic fluid reducing medication, or inducing controlled and supervised labor.

48. As a direct and proximate result of the negligence of KWC, their agents, apparent agents, servant and/or employees, as alleged herein and incorporated by reference, Crystal Fry and Jade Elizabeth Fry, faced an increased risk of harm from placental abruption during childbirth, and a claim is made therefore.

49. The negligence and deviation from the standard of care by KWC and its staff was the direct and proximate cause of the injuries and death suffered by Jade Elizabeth Fry, and a claim is made therefore.

50. As a direct an proximate result of the negligence of KWC and its staff, Jade Elizabeth Fry suffered extensive pain and discomfort, impairment, permanent injury, and loss of life's pleasures. The damages and injuries suffered by her continued until the time of her death.

51. As a direct and proximate result of the negligence set forth herein, Plaintiffs, Crystal and Andrew Fry, have incurred medical and psychological expenses and income losses on behalf of their deceased minor daughter.

**WHEREFORE**, Plaintiffs, Crystal and Andrew Fry, individually and as the Administrators of Jade Elizabeth Fry's Estate respectfully request judgment in their favor and against Defendant, United States of America, for all damages recoverable under law in an amount in excess of the jurisdictional limit for federal arbitrations plus interest, costs of suit, and any other relief deemed appropriate by the Court.

### COUNT II – SURVIVAL

52. All prior paragraphs are incorporated herein as if set forth at length.

53. Plaintiffs bring this action on behalf of Jade Elizabeth Fry's Estate pursuant to 20 Pa. C.S.A. §3373 and 42 Pa. C.S. §8302.

54. As a direct and proximate result of the negligence of KWC and its staff as set forth herein, Jade Elizabeth Fry died.

55. As a direct and proximate result of the negligence of the KWC and its staff, Jade Elizabeth Fry suffered physical pain, mental anguish, emotional distress, discomfort, loss of future earnings, social security, and other benefits, as well as loss of life's pleasures.

56. Crystal and Andrew Fry, as Administrators of the Estate of Jade Elizabeth Fry, make a claim for damages described above in addition to all damages recoverable pursuant to Pennsylvania law.

**WHEREFORE**, Plaintiffs, Crystal and Andrew Fry, individually and as the Administrators of Jade Elizabeth Fry's Estate respectfully request judgment in their favor and against Defendant, United States of America, for all damages recoverable under law in an amount in excess of the

jurisdictional limit for federal arbitrations plus interest, costs of suit, and any other relief deemed appropriate by the Court.

## COUNT III – WRONGFUL DEATH

57. All prior paragraphs are incorporated herein as if set forth at length.

58. Crystal and Andrew Fry bring this action pursuant to 42 C.A. §8301 and Pa. R.C.P. §2202(a) as the personal representative of Jade Elizabeth Fry to recover for her wrongful death.

59. Crystal and Andrew Fry, as Administrators of the Estate of Jade Elizabeth Fry, bring this action for and on behalf of those persons entitled to recover damages in this action, including Jade's mother, Crystal Fry, and Jade's father, Andrew Fry.

60. As a direct and proximate result of KWC and its staff's negligence, as set forth herein, the Plaintiffs have suffered, and KWC and its staff are liable for the following damages, including funeral expenses of the Decedent, medical expenses related to the treatment provided to the Decedent, expenses of administration related to the Decedent's Estate, and Plaintiffs' loss of contributions for support, care, and services which would have been provided to their family

61. Crystal and Andrew Fry, Administrators of the Estate of Jade Elizabeth Fry, make a claim for damages described above in addition to all damages recoverable pursuant to the law.

**WHEREFORE**, Plaintiffs, Crystal and Andrew Fry, individually and as the Administrators of Jade Elizabeth Fry's Estate respectfully request judgment in their favor and against Defendant, United States of America, for all damages recoverable under law in an amount in excess of the jurisdictional limit for federal arbitrations plus interest, costs of suit, and any other relief deemed appropriate by the Court.

Respectfully submitted,

**R. J. MARZELLA & ASSOCIATES, P.C.**

By: _____
Robin J. Marzella, Esquire
Attorney Identification No. 66856

Dated: 5/25/16